**May DINGER, Plaintiff,**

v.

**John P. GULINO, Defendant.**

**No. CV–86–3951.**

United States District Court,
E.D. New York.

May 28, 1987.

Hart & Gussow, Staten Island, N.Y. by John A. Gussow, for plaintiff.

Anthony J. DeMarco, Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

SIFTON, District Judge.

Plaintiff, appearing individually and as executrix of the estate of her late husband, commenced this action against defendant, the estate's former attorney, seeking to recover damages and attorneys' fees based upon defendant's alleged misconduct in connection with the administration of the

estate. Jurisdiction is based upon the parties' diverse citizenship. This matter is currently before the Court on defendant's motion for an order dismissing the action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and plaintiff's motion to disqualify defendant's counsel, Mr. DeMarco, based upon Mr. DeMarco's representation of plaintiff in a previous action.

The following facts are derived from the affidavits and exhibits submitted in connection with these motions.

In January 1976, plaintiff's husband, August Dinger, died in Staten Island. A probate hearing was commenced in the Richmond County Surrogate's Court and the Surrogate appointed plaintiff as executrix of her husband's will in February 1977. At the time of her appointment, plaintiff resided in Staten Island; however, she alleges that she currently resides in New Jersey.[1]

In October of 1980, plaintiff alleges that she engaged defendant, a New York resident, to represent the interests of plaintiff and the estate. Defendant acted as attorney for plaintiff and the estate until his discharge in 1986.

In 1981, the decedent's daughter, Mary Ann Gunther, commenced an action against the plaintiff herein and other family members in the Southern District of New York in connection with the administration of the decedent's estate. Mary Ann alleged that plaintiff converted and fraudulently transferred a portion of the decedent's substantial securities holdings. She also alleged that plaintiff defrauded the estate by converting estate assets, refusing to pay estate obligations, and selling estate property at prices below fair market value. Mary Ann alleged that this conduct violated the federal and state securities laws, RICO, and common law principles of fraud, and constituted breach of fiduciary duty and

unjust enrichment. The defendant in the instant case represented the plaintiff and her family members as defendants in the Southern District action. However, in April 1983, as trial of that action neared, defendant herein recommended that his current attorney, Mr. DeMarco, be engaged to try the case on behalf of plaintiff and her family.[2] In preparation for the defense of the case, plaintiff alleges that she made disclosures to Mr. DeMarco about her "late husband's dealings—which formed the basis of [Mary Ann Gunther's] claims, in large measure"—and the scope of plaintiff's defense. She also alleges that "Mr. DeMarco had full and total access and did, in fact, examine all of my records, Estate files, personal checking accounts, and the files maintained by [other family members]." Mr. DeMarco's bill for legal services rendered, which is attached to his affidavit, outlines the work he engaged in for trial. On April 27, 1983, Mr. DeMarco met with defendant herein for an "in depth review and discussion of the case." Another such meeting between defendant and DeMarco was held on April 29th. On April 30th, Mr. DeMarco held a conference which plaintiff and defendant, among others, attended.

On May 10, 1983, after several days of trial before Judge Conner, the parties entered into a stipulation of settlement in open court in which, according to Mr. DeMarco, the parties to that action sought to end all litigation involving the estate. During this part of the action, both Mr. DeMarco and defendant spoke to the court on behalf of plaintiff. As part of the settlement, it was agreed that real estate called the "Shoals property" would be sold as soon as practicable after canvassing available buyers. Mr. DeMarco alleges that after the case settled his involvement with

---

**1.** Defendant's counsel alleges that other heirs of the Dinger estate, including the decedent's daughters, Linda Thompson and Mary Ann Gunther, and his son, August Dinger, Jr., are residents of the State of New York. Plaintiff alleges that all heirs-at-law reside in New Jersey.

**2.** The parties appear to disagree, however, over who actually retained Mr. DeMarco. Plaintiff

alleges that she and her family hired and paid for Mr. DeMarco's services based exclusively upon defendant's recommendation. Mr. DeMarco alleges that defendant retained him as trial counsel but concedes that plaintiff approved of his engagement and that he tried the case on behalf of plaintiff and her family.

matters relating to the plaintiff and the estate ceased.

After plaintiff discharged defendant as attorney for herself and the estate, plaintiff filed a petition against defendant in the Richmond County Surrogate's Court. The petition sought to recover damages based upon defendant's alleged commingling of estate funds, failure to account for his fees, negligence, and fraud. Although plaintiff paid the requested filing fee, the Surrogate declined to entertain the petition on November 7, 1986.

Accordingly, on November 20, 1986, plaintiff filed and served a summons and complaint against defendant in the Eastern District of New York. The complaint, which purportedly seeks the relief sought in the petition to Surrogate's Court, sets forth the following nine claims for relief: (1) a claim for damages, the appointment of a referee, and an accounting based upon defendant's alleged commingling of estate funds in his law firm account; (2) an action to recover unauthorized and unreasonable fees which defendant paid to himself; (3) an action for damages based upon defendant's breach of his duties in connection with the sale of the "Shoals property" pursuant to the 1983 settlement; (4) a claim to recover the costs incurred in closing the Surrogate's Court proceeding; (5) an action for damages based upon defendant's conduct in encouraging plaintiff to sign a fraudulently prepared property deed; (6) a damages action based upon defendant's negligence in advising plaintiff to sell parcels of the estate at prices below market value and failing to assert defenses to claims against the estate; (7) an action to surcharge defendant for excessive attorneys' fees based upon an accounting or, in the alternative, by placing a constructive trust on the proceeds received from defendant from his representation of the estate; (8) an action for damages based upon defendant's negligence in failing to prosecute claims on behalf of the estate; and (9) an action to recover the fees paid to Mr. DeMarco in connection with the defense of the 1983 suit based upon the grounds that defendant engaged DeMarco and others without plaintiff's permission and that plaintiff believed that "defendant would be discharging the legal work on behalf of [plaintiff's] interests and that any assistance defendant required would be undertaken by him as part of his costs."

At some point after plaintiff filed her complaint, the action probating the Dinger estate in Richmond County Surrogate's Court was closed.

The defendant failed to interpose an answer to plaintiff's complaint within twenty days of filing. After the time to answer had expired, Mr. DeMarco, acting on defendant's behalf, contacted plaintiff's counsel and requested an extension of time to answer. Plaintiff refused to grant such an extension because she believed that Mr. DeMarco was disqualified from representing defendant in this action since he represented plaintiff in the Southern District litigation in 1983. On December 23, 1986, Judge Costantino, to whom this case was originally assigned, directed that the parties appear before him on February 3, 1987. At that conference, Judge Costantino vacated any default that may have been entered against defendant and directed that defendant answer the complaint by February 23, 1987. Judge Costantino also recused himself from further consideration of this matter. In lieu of answering the complaint, defendant filed a motion to dismiss the complaint for lack of diversity jurisdiction on February 20, 1987.

Defendant argues that the Court lacks subject matter jurisdiction over this action on two grounds. First, he contends that, because plaintiff seeks relief on behalf of a New York estate and New York beneficiaries, there is no diversity of citizenship since defendant resides in New York. Second, defendant argues that, even if the parties are diverse, the Court should not exercise jurisdiction on the ground that plaintiff's claims fall within the so-called probate exception—that is, defendant contends that, since plaintiff seeks to surcharge defendant and obtain an accounting in some of her claims and since the other relief that she seeks is "closely interwoven" with these probate matters, the Court should decline to exercise its jurisdiction.

In response, plaintiff first claims that the Court should defer its consideration of the jurisdictional issue until it has resolved the allegedly "threshold" question of whether Mr. DeMarco should be disqualified as defendant's attorney based upon his previous representation of plaintiff. In addition, plaintiff argues that it is her citizenship rather than the locus of the estate that controls for diversity purposes. She also claims that the Court should exercise jurisdiction since there are no pending actions in state probate court and since the probate court declined to entertain this action.

With respect to plaintiff's motion to disqualify defendant's attorney, plaintiff argues that this action involves the same subject matter as the Southern District litigation and notes that one of her claims against defendant arises from defendant's alleged breach of his duty to sell the "Shoals property" in accordance with the terms of the Southern District settlement. Since Mr. DeMarco represented plaintiff in the Southern District action, plaintiff contends that Mr. DeMarco should be disqualified in order to prevent the disclosure of confidential information and avoid the appearance of impropriety. Plaintiff also contends that Mr. DeMarco's ethical breach is so blatant that the Court should sanction him pursuant to Rule 11 of the Federal Rules of Civil Procedure. In response, Mr. DeMarco notes that, although this action and the prior suit involved the same estate, the actions involve different subject matter. Mr. DeMarco alleges that plaintiff's claims in this case are based on events that occurred long after his role as trial counsel in the Southern District action had terminated. He also argues that plaintiff has failed to show that he received any confidential information in connection with the Southern District trial that is relevant to this action.

## DISCUSSION

For the reasons set forth below, defendant's motion to dismiss for lack of subject matter jurisdiction is denied. Plaintiff's motion for an order disqualifying defendant's attorney, Mr. DeMarco, is also denied.

### Subject Matter Jurisdiction [3]

■. The allegations of jurisdiction contained in the complaint are sufficient on their face to demonstrate the existence of diversity jurisdiction. Plaintiff brings this action individually and as executrix of her husband's estate. She is a resident of New Jersey. Defendant is a citizen of New York.

■ Defendant's argument that there is no diversity because the estate is located in New York is without merit. When a party brings an action as an executor of an estate, it is the executor's "citizenship that is material when jurisdiction is dependent upon the character of the parties." 3A J. Moore, *Moore's Federal Practice* ¶ 17.04, at 112–13; *see also* Fed.R.Civ.P. 17(a); *Field v. Volkswagenwerk AG*, 626 F.2d 293, 302 (3d Cir.1980).

■ Despite the existence of diversity jurisdiction, defendant argues that the Court should not exercise its jurisdiction because the case falls within the probate exception to diversity jurisdiction. This argument, too, lacks merit. While federal courts have no power to probate a will, administer an estate, or entertain any action that would interfere with probate proceedings pending in a state court or with the state court's control over property in its custody, *Markham v. Allen*, 326 U.S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256 (1946); *Celentano v. Furer*, 602 F.Supp. 777, 779 (S.D.N.Y.1985), they can adjudicate claims *in personam* that do not "dis-

---

3. Contrary to plaintiff's position, the Court concludes that the question of whether this Court has jurisdiction over this matter should be considered before plaintiff's motion to disqualify defendant's attorney. Absent jurisdiction, it would be inappropriate for this Court to enter orders, even regarding a motion to disqualify an attorney, in this matter. When faced with simultaneous motions to dismiss for lack of jurisdiction and attorney disqualification, other courts have decided the jurisdictional question first. *See Medical Management Resources, Inc. v. Waxman*, No. 86–5237, slip op. (E.D.Pa. Jan. 9, 1987) [Available on WESTLAW, DCT database]; *Vetter v. Sands*, No. CV–81–5072, slip op. (S.D.N.Y. May 20, 1985) [Available on WESTLAW, DCT database].

rupt the probate court's administration of the estate." *Lamberg v. Callahan,* 455 F.2d 1213, 1216 (2d Cir.1972); 1 J. Moore, *supra,* ¶ 0.71[5], at 701.89. In the Second Circuit, the standard for determining whether federal jurisdiction may be exercised is "whether under state law the dispute would be cognizable only by the probate court." *Lamberg,* 455 F.2d at 1216; *Dannhardt v. Donnelly,* 604 F.Supp. 796, 800 (E.D.N.Y.1985).

In the instant case, many of plaintiff's claims against defendant clearly fall outside of the probate exception. In plaintiff's third, fifth, sixth and eighth claims for relief, plaintiff seeks to recover damages based upon defendant's alleged fraud, negligence, and breach of duty in connection with the disposition of estate property and the assertion of estate claims. These are essentially common law tort actions. Moreover, the Surrogate's Court declined to exercise jurisdiction over plaintiff's petition. Accordingly, these claims for relief do not fall within the probate exception. *Giardina v. Fontana,* 733 F.2d 1047, 1050 (2d Cir.1984).

In her other claims for relief, plaintiff seeks to recover estate property, attorneys' fees, and costs from defendant in most cases pursuant to an accounting or the imposition of a constructive trust. Defendant argues that these claims are in the nature of a surcharge and thus fall within the domain of the Surrogate's Court. Defendant, however, does not dispute that the Dinger probate proceeding in Richmond County has been closed. Accordingly, since it appears that the probate court has made a final accounting and distributed the entire estate, plaintiff's claims can be construed as applying only to the property that is no longer subject to the probate court's jurisdiction. *Giardina, supra,* 733 F.2d at 1051; *Celentano, supra,* 602 F.Supp. at 781.

Defendant also appears to argue that the Court should exercise its discretion to abstain from taking jurisdiction since the matters at issue, although they may not fall squarely within the probate exception, are "closely interwoven" with matters over which the state court has special competence. When a federal court has subject matter jurisdiction over an action, it has a "virtually unflagging obligation" to exercise that jurisdiction. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817–18, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1976). However, a district court may decline to exercise its jurisdiction in favor of concurrent state proceedings in "exceptional circumstances" based on "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at 817, 96 S.Ct. at 1246. In determining whether such exceptional circumstances exist, the Court may consider the following factors: (1) assumption by either state or federal court of jurisdiction over property, (2) convenience to the parties of one forum over the other, (3) avoidance of piecemeal litigation, (4) the order in which jurisdiction was obtained, (5) whether federal or state law supplies the rule of decision, and (6) whether the state proceeding will adequately protect the party seeking to invoke federal jurisdiction. *Moses H. Cone Memorial Hosp. v. Mercury Construction Co.,* 460 U.S. 1, 23–27, 103 S.Ct. 927, 941–43, 74 L.Ed.2d 765 (1983); *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,* 800 F.2d 325, 327 (2d Cir.1986). The balance of these factors is weighted heavily in favor of the exercise of jurisdiction. *Cone,* 460 U.S. at 16, 103 S.Ct. at 937.

In the instant case, the Court is not confronted with exceptional circumstances. The state court probate proceeding has been closed. Thus, litigating this action in federal court does not create piecemeal litigation. Moreover, the Surrogate declined to entertain plaintiff's petition. In *Giardina,* the Second Circuit noted that a state court's denial of jurisdiction "almost makes out exceptional circumstances for keeping the case in federal court." 733 F.2d at 1053.[4] Accordingly, it would be inappropri-

---

**4.** It should be noted that the Court of Appeals in

*Giardina* distinguished the decisions that plain-

**444**

ate to abstain from exercising jurisdiction over this matter.

### Attorney Disqualification

In her disqualification motion, plaintiff essentially contends that Mr. DeMarco's representation of defendant violates Canons 4 and 9[5] of the Code of Professional Responsibility because Mr. DeMarco, as trial counsel in the Southern District action, received or was in a position to receive privileged information, thus giving defendant an unfair advantage. In order to disqualify Mr. DeMarco pursuant to Canon 4, plaintiff must establish that

"(1) the moving party is a former client of the adverse party's counsel;

"(2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

"(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client."

*Evans v. Artek Systems, Inc.,* 715 F.2d 788, 791 (2d Cir.1983). Because disqualification frustrates a client's interest in freely choosing his legal representative, the Second Circuit places "a high standard of proof on ... one who seeks to disqualify his former counsel." *Government of India v. Cook Indus., Inc.,* 569 F.2d 737, 739 (2d Cir.1978); *see also Forte v. Cities Serv. Co.,* No. CV–82–7120, slip op. (S.D.N.Y. Sept. 22, 1983) [Available on WESTLAW, DCT database].

■ In the instant case, although it appears that Mr. DeMarco represented plaintiff in the Southern District action, disqualification is not warranted because plaintiff has failed to establish the second and third

elements of the test set forth in *Evans*. In order to establish a substantial relationship between the instant case and the Southern District action, the plaintiff must demonstrate that the issues involved in the previous action are "identical" to or "essentially the same" as the issues raised in the instant case. *Cook Indus., supra,* 569 F.2d at 740. No such similarity exists here. While the action before Judge Conner involved claims that plaintiff acted fraudulently and negligently in managing the estate, the instant case raises questions about the conduct of plaintiff's estate attorney. Not only do the cases involve different people's conduct, but the period of time covered by the actions is different. The Southern District action was filed in 1981; the complaint in the instant case, although it lacks specificity as to dates, appears to challenge defendant's activities subsequent to the settlement of the Southern District action in 1983. *See* Complaint at ¶ 52 (defendant's allegedly fraudulent request to have plaintiff sign altered deed occurred in 1986). Moreover, although plaintiff attacks defendant's conduct in selling the Shoals property, which sale was required by the settlement of the Southern District litigation, a substantial relationship is still not established since Mary Ann Gunther complained of the conduct of plaintiff and her family in connection with that property in the Southern District action, not the conduct of defendant herein.

■ More importantly, even if plaintiff could establish a substantial relationship between the two actions, plaintiff has failed to show that Mr. DeMarco received or was in a position to receive privileged information not available to his present client. To satisfy the third prong of the *Evans* test, plaintiff must prove that Mr. DeMarco "was in a position where he could have received information which his former

tiff cites in support of abstention, such as *Phillips Nizer v. Rosensteil,* 490 F.2d 509 (2d Cir. 1973), on the ground that such decisions involved "controlling or obscure questions of state law and special state expertise." 733 F.2d at 1051. The Court of Appeals also characterized *Phillips Nizer* as being out of step with subsequent Supreme Court decisions which favor the exercise of federal court jurisdiction.

5. Canon 4 states that "[a] lawyer should preserve the confidences and secrets of a client," and Canon 9 provides that "[a] lawyer should avoid even the appearance of professional impropriety."

client [plaintiff] might reasonably have assumed [Mr. DeMarco] would withhold from his present client [defendant]." *Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir.1977); *Cross & Cross Properties, Ltd. v. Everett Allied Co.*, No. CV–86–2890, slip op. (S.D. N.Y. Mar. 12, 1987) [Available on WEST-LAW, DCT database]. In the instant case, plaintiff acknowledges, and even insists, that defendant recommended that plaintiff hire Mr. DeMarco to try the Southern District action and that both defendant and Mr. DeMarco represented plaintiff during the trial. *See* Transcript of Settlement at pp. 5–6 (both defendant and Mr. DeMarco addressed the court to iron out settlement terms). Moreover, Mr. DeMarco's bill for legal services indicates that he met with defendant and plaintiff at a meeting only two days before trial at which Mr. DeMarco obtained additional materials for plaintiff's defense and selected various exhibits. Since defendant and Mr. DeMarco worked together to represent plaintiff and since all three met together to discuss the trial, plaintiff could not reasonably have expected that Mr. DeMarco would have withheld confidential information from defendant during the Southern District action. *Laurelle Mfg. Corp. v. Truly Yours, Inc.*, No. CV–85–9080, slip op. (S.D.N.Y. Jan 29, 1987) [Available on WESTLAW, DCT database]. Accordingly, disqualification under Canon 4 is not warranted.

Plaintiff also appears to argue that Mr. DeMarco should be disqualified because his representation of defendant creates the appearance of impropriety in violation of Canon 9. The mere appearance of impropriety, however, is not a sufficient basis for granting a disqualification motion absent a threat that the trial will be tainted. *Armstrong v. McAlpin*, 625 F.2d 433, 446 (2d Cir.1980); *Board of Educ. v. Nyquist*, 590 F.2d 1241, 1247 (2d Cir.1979). Litigation may be tainted when an attorney's successive representation of adverse interests raises the possibility that the attorney will use confidences gained in the prior representation to the detriment of his

former client. *USFL v. NFL*, 605 F.Supp. 1448, 1452 (S.D.N.Y.1985). In the instant case, by meeting with defendant and Mr. DeMarco and by approving of Mr. DeMarco and defendant representing her at trial, it appears that plaintiff could not have maintained any confidences with Mr. DeMarco that were not known by defendant. Under these circumstances, the Court declines to disqualify Mr. DeMarco.[6]

For the foregoing reasons, defendant's motion to dismiss is denied, and plaintiff's motion to disqualify defendant's counsel is denied.

The Clerk is directed to mail a copy of the within to all parties.

SO ORDERED.

---

**6.** Given this disposition, the Court need not consider plaintiff's application for sanctions against    Mr. DeMarco.